UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| Robert Doyle, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>Matrix Warranty Solutions, Inc. d/b/a Element Protection,<br><br>*Defendant.* | Civil Action No. 22-03198(MEF)(AME)<br><br>**OPINION and ORDER** |

The Plaintiff sued under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii), alleging that he received a prerecorded phone call for which the Defendant is liable.

The Defendant has now moved to dismiss. The motion is denied.

**I.   Subject Matter Jurisdiction**

The Court must satisfy itself that it has subject matter jurisdiction, and "when there is a question as to [the Court's] authority to hear a dispute, it is incumbent upon the court[] to resolve such doubts . . . before proceeding to . . . the merits." Zambelli Fireworks Mfg. Co., Inc. v. Wood, 592 F.3d 412, 418 (3d Cir. 2010) (cleaned up).

Here, there are two potential "doubts."

First, the Plaintiff alleges that he received a prerecorded call, see Amended Complaint at ¶¶ 30-32,[1] and that this amounted to an "inva[sion]" of his "personal privacy." Id. at ¶ 22. To trigger the Court's subject matter jurisdiction, the phone call must constitute a "concrete" injury. See Transunion, LLC v. Ramirez, 141 S.Ct. 2190 (2021); Spokeo, Inc. v. Robins, 578 U.S. 330 (2016); see generally Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

It does. See Susinno v. Work Out World, Inc., 862 F.3d 346 (3d Cir. 2017) (holding that a plaintiff who received a single phone call has pleaded a sufficiently "concrete" injury); see also Leyse v. Bank of Am. Nat'l Ass'n, 856 F. App'x 408, 411 (3d Cir. 2021).

It is true that the plaintiff in the cited case, Susinno, met her standing burden by alleging that she received a single unwanted call that went to voice mail. See id. at 348, 352. And the Plaintiff in this case would meet his standing burden by alleging receipt of a single unwanted call, answered before it went to voice mail. See Amended Complaint at ¶¶ 30-33.

But this does not matter. If anything, speaking with an unwanted caller (as alleged here) represents a more "concrete" injury than picking up an unwanted voice mail (as in Susinno).[2]

Second, in addition to other relief, the Plaintiff seeks an injunction to prevent the Defendant from violating the TCPA in the future. See Amended Complaint at ¶ 97. The Plaintiff must "demonstrate standing separately for each form of relief sought[,]" Friends of the Earth v. Laidlaw Env't Servs. TOC, Inc., 528 U.S. 167, 185 (2000), and to establish standing for injunctive relief a plaintiff must generally show that they are "likely to suffer future injury" caused by the defendant. City of Los Angeles v. Lyons, 461 U.S. 95, 105 (1983).

The Amended Complaint sets forth no allegations that purport to satisfy this standard. Accordingly, the request for injunctive relief will be stricken from the Amended Complaint, in keeping

---

[1] "Amended Complaint," refers to the most recent complaint, at Docket Entry 20.

[2] Susinno was decided in light of the jurisdictional principles laid down by the Supreme Court in Spokeo --- but before the Court issued its most recent landmark decision in this area, Transunion. But this, too, does not matter. Transunion did not alter Spokeo in ways that are relevant here.

2

with "this Court's continuing obligation to assess its subject matter jurisdiction." Zambelli, 592 F.3d at 420.³

## II. Merits

The Defendant, as noted, has filed a motion to dismiss.

To survive such a motion, a complaint must plead facts that make the claim for relief set out in the complaint "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. This analysis is "context specific, requiring the reviewing court to draw on its experience and common sense." Id. at 663-64.

In the Third Circuit, motions to dismiss are assessed as follows.

First, the Court "must tak[e] note of the elements a plaintiff must plead to state a claim." Connolly v. Lane Constr. Corp., 809 F.3d 780, 787 (3d Cir. 2016). Second, the Court must identify those allegations that are merely conclusory, and set them to one side as irrelevant to the analysis. See id. Third, the Court must determine whether the remaining allegations "plausibly give rise to an entitlement to relief." Id. (quoting Iqbal, 556 U.S. at 679).

### A. Elements of the TCPA

The Plaintiff invokes Section 227(b)(1)(A)(iii) of the TCPA. That Section reads:

> It shall be unlawful for any person . . . —
>
> > **(A)** to make any call (other than a call . . . made with the prior express consent of the called party) using any . . . prerecorded voice—
> >
> > > **(iii)** to any telephone number assigned to a . . . cellular telephone service, . . . .

The elements of a Section 227(b)(1)(A)(iii) violation are "that (1) the defendant called a cellular telephone number; (2) using

---

³ As set forth in the Order issued today, the request for injunctive relief will not be stricken for two weeks, to afford the parties time to make any filings they deem relevant to that issue.

3

a[] . . . prerecorded voice; (3) without the recipient's prior express consent." Camunas v. Nat'l Republican Senatorial Comm., 541 F.Supp.3d 595, 601 (E.D. Pa. 2022) (cleaned up). See generally Mims v. Arrow Fin. Serv., LLC, 565 U.S. 368, 373 (2012) (["T]he TCPA forbids using . . . prerecorded voice messages to call [cellular] telephone lines without prior express consent."); Perrong v. Victory Phones, LLC, 519 F.Supp.3d 193, 197 (E.D. Pa. 2021).

### B. Analysis of the Amended Complaint

The Defendant argues only that the Plaintiff has failed to satisfy the first element of Section 227(b), because it was another entity, "Element Protection," that called the Plaintiff --- and the Defendant cannot be liable based on Element's conduct. See Motion to Dismiss at page 5.

The Plaintiff responds by arguing that the Defendant can be liable for Element's conduct on a vicarious liability theory (see II.B.1) or on a direct liability theory (see II.B.2).

#### 1. Vicarious Liability

Section 227(b) of the TCPA is silent as to the possibility of vicarious liability. It says nothing on the subject.

But with the TCPA Congress created a tort action. See, e.g., Klein v. Just Energy Grp., Inc., 2016 WL 3539137, at *9 (W.D. Pa. June 29, 2016); cf. City Select Auto Sales Inc. v. David Randall Assoc., Inc., 885 F.3d 154, 163 (3rd Cir. 2018)(Shwartz, J., Concurring). And "[w]hen Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules." Meyer v. Holley, 537 U.S. 280, 285 (2003).

In keeping with this principle, most courts have concluded that a plaintiff may recover on a vicarious liability theory under Section 227(b) of the TCPA. See Warciak v. Subway Rest., Inc., 949 F.3d 354, 356 (7th Cir. 2020); Hodgin v. UTC Fire & Sec. Am. Corp., Inc., 885 F.3d 243, 251-52 (4th Cir. 2018); Keating v. Peterson's Nelnet, LLC, 615 F.App'x 365, 371 (6th Cir. July 21, 2015); Campbell-Ewald Co. v. Gomez, 768 F.3d 871, 877 (9th Cir. 2014) aff'd 577 U.S. 153 (2016); Smith v. Vision Solar, LLC, 2022 WL 1172985, at *2 (E.D. Pa. Apr. 20, 2022); Landy v. Nat. Power Sources, LLC, 2021 WL 3634162, at *3 (D.N.J. Aug. 17, 2021); Frey v. Frontier Util. Ne., LLC, 2020 WL 12697468, at *2

(E.D. Pa. Apr. 13, 2020); Newell v. Strategic Admin. Grp., Inc., 2020 WL 12770854, at *1 (E.D. Pa. May 6, 2020); Kline v. Elite Med. Lab'y, Inc., 2019 WL 6828590, at *5 (M.D. Pa. Dec. 13, 2019); Valdes v. Century 21 Real Estate, LLC, 2019 WL 5388162, at *3-4 (D.N.J. Oct. 22, 2019); Cunningham v. Cap. Advance Sol., LLC, 2018 WL 6061405, at *6 (D.N.J. Nov. 20, 2018); In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig., 223 F.Supp.3d 514, 518-19 (N.D. W.Va. 2016); Richardson v. Verde Energy USA, Inc., 2016 WL 7380708, at *3-4 (E.D. Pa. Dec. 19, 2016); Klein v. Just Energy Grp., Inc., 2016 WL 3539137, at *9 (W.D. Pa. June 29, 2016); Jackson v. Caribbean Cruise Line, Inc., 88 F.Supp.3d 129, 138 (E.D.N.Y. 2015); Smith v. State Farm Mut. Automobile Ins. Co., 30 F.Supp.3d 765, 773 (N.D. Ill. 2014); Hartley-Culp v. Green Tree Serv., LLC, 52 F.Supp.3d 700, 703 (M.D. Pa. 2014); Dobkin v. Enter. Fin. Grp., Inc., 2014 WL 435070, at *4 (D.N.J. Sept. 3, 2014).[4]

There is less on the other side of the ledger. One court has held that Section 227(b) of the TCPA does not permit recovery on a vicarious liability theory --- because while Section 227(b) does not refer to vicarious liability, another part of the TCPA does. See Mais v. Gulf Coast Collection Bureau, Inc., 944 F.Supp.2d 1226, 1242 (S.D. Fla. 2013); see generally, e.g., Marx v. Gen. Revenue Corp., 568 U.S. 371, 381 (2013) (describing the context in which the expressio unius canon can be applied to interpretation of a federal statute).

But there is no need, now, to choose between the majority rule (Section 227(b) allows recovery on a vicarious liability basis) and the minority rule (it does not). This is because even if as a general matter vicarious liability is possible under Section

---

[4] The Federal Communications Commission shares this view. See In re Joint Petition Filed by Dish Network LLC, 28 F.C.C.R. 6574, 6582 (2013) ("[A] seller may be liable for violations by its representatives under a broad range of agency principles."). Is the FCC's conclusion entitled to deference? This question has been answered in divergent ways. Compare, e.g., See Campbell-Ewald Co., 768 F.3d at 877 (deference) with Dish Network, LLC v. Fed. Commc'n Comm'n, 552 F.App'x 1 (D.C. Cir. 2014)) (none). But this debate does not matter here --- as set out below, even if a plaintiff may generally recover on a Section 227(b) vicarious liability theory, the Plaintiff in this case cannot do so on the allegations in the Amended Complaint.

227(b), the Amended Complaint does not contain allegations that would allow for such liability.

Courts that hold that Section 227(b) of the TCPA permits vicarious liability routinely cite the Restatement (Third) of Agency as setting forth the relevant vicarious liability principles. See Warciak, 949 F.3d at 357; Hodgin, 885 F.3d at 252; Campbell-Ewald Co., 768 F.3d at 878; Jackson, 88 F.Supp.3d at 138; Smith, 30 F.Supp.3d at 773. Neither party in this case has suggested a different approach. In this circumstance, the Court will apply the Restatement (Third). Cf., e.g., Williams v. BASF Catalysts, LLC, 765 F.3d 306, 316 (3d Cir. 2016).

Under the Restatement, there are three principal theories of vicarious liability.

First, a principal may be liable based on the acts of an agent when the agent acts with actual authority. See Restatement (Third) Agency § 1.01 (2006). "[A]n agent's actual authority originates with expressive conduct by the principal toward the agent by which the principal manifests assent to action by the agent with legal consequences for the principal." Id. § 2.01 cmt. b (2006). Thus, for example, actual authority may be created by a contract between the principal and the agent. See id. Or it may be created by direction given by the principal to the agent. See id. at cmt. c; see also, e.g., Landy v. Nat. Power Sources, LLC, 2021 WL 3634162, at *4 (D.N.J. Aug. 17, 2021).

Here, the purported principal is the Defendant, and the purported agent is Element, which allegedly made the phone call at issue. But there are no allegations that Element had actual authority to act on the Defendant's behalf. The Amended Complaint does not, for example, describe any communications between Element and the Defendant, or any contract between them. And, more generally, the Amended Complaint does not describe any control of Element by the Defendant. Such control is the key touchstone of actual authority. See Restatement (Third) Agency § 2.01 cmt. c, d (2006).

Second, a principal may be liable based on the acts of an agent when the agent acts with apparent authority. See id. § 2.013. "Apparent authority is the power held by an agent . . . when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." Id. at § 2.03.

6

Here, though, there is no allegation that the Plaintiff (who received a call from Element) knew anything about the Defendant. Accordingly, there could have been no basis for the Plaintiff to "reasonably believe[]" that Element was acting for the Defendant.

Finally, a principal may be liable for an action taken by the agent if the principal later ratifies the action. See id. § 4.01. "[R]atification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Doyle v. GoHealth, LLC, 2023 WL 3984951, at *4 (D.N.J. Mar. 30, 2023) (quoting Restatement (Third) Agency § 4.01 (2006)).

But here, as noted, there is no allegation that the Plaintiff (who received a call from Element) knew anything about the Defendant. Accordingly, there could have been no basis for the Plaintiff to conclude that, after the call, the Defendant had taken responsibility for it.

To summarize: The Plaintiff advances a vicarious liability argument --- that Element was acting for the Defendant, such that the Defendant is liable for Element's conduct. But even assuming that in certain circumstances a plaintiff may recover on a vicarious liability theory under Section 227(b) of the TCPA, the Amended Complaint does not set forth legally sufficient allegations to support vicarious liability in this case.

### 2. Direct Liability

The Plaintiff also presses a direct liability argument --- that Element and the Defendant are, for the purposes of this case, essentially functioning as the same entity, such that a call nominally made by Element can be chalked up to the Defendant, and can form a basis for the Defendant's liability under Section 227(b).

A number of allegations in the Amended Complaint support this conclusion.

First, the Defendant and Element share an address. Indeed, they operate out of the same office suite. See Amended Complaint at ¶¶ 61, 62.

Second, Element's website instructs customers to contact "our" lawyers --- at an email address of the Defendant,

7

legal@matrixprotection.[5] See Amended Complaint at ¶ 62 n.12. This allegation is especially probative given the care that lawyers are expected to take to separate out their work between one client and another.

Third, the Defendant and Element do business under somewhat similar names. When the Plaintiff received the complained-of phone call, the caller identified herself as calling from "Elementprotectionplans.com." See Amended Complaint at ¶ 34. And the website for the Defendant bears the name www.matrixprotection.com. See id. at ¶ 62 n.12.

Fourth, the Defendant and Element offer similar services. Compare id. at ¶ 20 (alleging that the Defendant "provides extended warranty services") with id. at ¶ 30, 31 (describing call which began with a prerecorded message --- "[w]e are calling regarding your vehicle warranty" --- and then pivoted to a live caller who said she was associated with "Elementprotectionplans.com").

Fifth, a contract on Element's website, see Amended Complaint at ¶ 63, is prominently labeled, in its header, "ElementEP Vehicle Service Contract." See id. at Exhibit A.

But the "ElementEP" contract says that "IT IS A SERVICE CONTRACT BETWEEN YOU AND THE ADMINISTRATOR OBLIGOR[.]" See id. at Exhibit A, page 3. The "[a]dministrator" is defined in the contract as Matrix Warranty Solutions, Inc., which is described as operating out of the same office suite as Element. See id. at Exhibit A, page 5. The "[o]bligor," also described as operating out of the same office suite as Element, is defined in the contract as "Matrix Financial Services, LLC," in forty-one states, "Matrix Financial Services, LLC, d/b/a/ Matrix Capital Services, LLC," in three states, Matrix Capital Services, LLC of Delaware" in one state, and "MFS of Florida Inc." in another state. See id. at Exhibit A, page 1.

In addition, and as is typical in such consumer-facing form contracts, the "ElementEP" contract describes obligations that run between "you" (the person who signs the contract, see id. at Exhibit A, page 5) and "we," "us" or "our." See id. at Exhibit A, page 4. "We," "us" and "our" are defined in the contract as "Matrix Financial Services LLC," id. at Exhibit A, page 5, an

---

[5] A reminder that the Defendant's name is "Matrix Warranty Solutions, Inc."

8

entity described as operating out of the same office suite as Element.

A number of inferences may be drawn from this cluster of allegations. See Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a probability requirement.") But a "plausible" inference, made in light of "experience and common sense," id. at 679, is that the Defendant and Element are, for present purposes, functioning as one and the same entity, and that the Defendant, for purposes that include the call the Plaintiff received, is doing business under the name Element. This means the Defendant can be liable for Element's alleged phone call to the Plaintiff --- and that, on a direct liability theory, the Amended Complaint passes muster.

\*   \*   \*

For the reasons set out above, the motion to dismiss is denied.

IT IS on this 26th day of June, 2023, so **ORDERED**.

_____
Michael E. Farbiarz, U.S.D.J.